## Wells v. Wells' Exors.

(Decided March 12, 1912.)

## Appeal from Madison Circuit Court.

Estates—Settlement of—Trustee—Action to Surcharge Settlement of.—In an action to surcharge the settlement of a trustee, evidence examined and held that the lower court did not err in finding that the trustee had accounted to appellant for all that was due him. In addition to the evidence heard, the judge of the lower court went to the Clerk's office and found an additional settlement, made six years after the one upon which this action is founded, and his finding in this case is entitled to more weight than is usually ascribed to a judgment of a lower court.

J. C. & D. M. CHENAULT and R. H. CROOKE for appellant.

J. A. SULLIVAN and S. M. WALLACE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On March 30, 1888, H. N. Wells, the father of appellant and C. T. Wells, departed this life testate. For some unexplained reason that part of his estate devised to appellant, W. B. Wells, was placed in the hands of C. T. Wells as trustee. He made appellant, his daughter, Mrs. Cobb, and C. T. Wells his executors. Appellant and Mrs. Cobb failed to qualify, however, and it seems that C. T. Wells alone qualified and settled the estate, and it appears that he did so satisfactorily to all parties in interest. Upon a settlement of the estate in 1888, it appears that appellant's part, after deducting what he bought at the sale and some other small amounts, was $1,080.92, and at the close of that settlement it was stated in writing that this amount was invested in real estate for W. B. Wells. There is nothing in the will, however, requiring it to be so invested, and, in fact, it was not. T. C. Wells and appellant came to an agreement whereby this fund was to be invested in land, but when they went to survey the land a disagreement arose and they abandoned the idea of investing it in land and made an agreement that T. C. Wells was to pay the money to W. B. Wells along from time to time, as he might need it to support himself and family. It appears that W. B. Wells had a family consisting of his wife and eight or nine children, and that he was hardly

able to support himself and family upon the small farm
on which they resided. T. C. Wells lived until 1907, and
there appears to have been no trouble or litigation be-
tween them. This action was brought about two years
after his death and was based upon the settlement of
1888 and sought to recover the $1,080.92 with its interest.
Appellant does not give T. C. Wells credit in his peti-
tion for anything. The executors of T. C. Wells an-
swered denying that they were indebted to appellant
in any sum, and filed with their answer many receipts,
accounts and checks from T. C. Wells payable to W. B.
Wells of different dates, extending from 1888 to about
1901 or 1902, and alleged that at that date T. C. Wells
had overpaid W. B. Wells to the extent of four or five
hundred dollars; that after that date he refused for that
reason to pay him any more.

Depositions were taken by the parties. Appellant
and his witnesses tend to show that no money or other
thing had been paid to him by T. C. Wells since the set-
tlement of 1888. Appellee's witnesses tend to show that
he had been paid in money, checks and merchandise, a
large amount between these dates and several witnesses
testified that the trustee, T. C. Wells, from 1900 to 1902,
from time to time, refused to pay anything more to W.
B. Wells, stating to him that he had already more than
accounted to him for all that ever came to his hands.
They proved by one witness that upon a certain occa-
sion before the last named date, W. B. Wells returned
from town, the place where T. C. Wells lived, and his
wife asked him if he had received any money or corn
and he answered no and said to his wife, ''How can you
expect me to get anything when there is nothing due
me?'' There were other statements in the testimony
indicating that he had gone to town to get help from
his brother, T. C. Wells. It is true all these statements
were denied, but it was shown and admitted that T. C.
Wells had failed and refused to pay him any money or
to furnish him any means from that time to his death.
It was also shown by the testimony, and admitted by
appellant, that his farm was poor; that he was hardly
able to support himself and family from it and that he
needed assistance during all that time.

The case was submitted, and the judge of the court,
not being satisfied with the record as presented, went
to the county clerk's office and turned the records of
settlements leaf by leaf, and found a settlement made

by T. C. Wells as trustee of W. B. Wells, on December 19, 1894, made six years after the settlement upon which this action was founded. In that settlement, T. C. Wells was charged with $1,080.92 and with $510.38 as interest and was given credit for vouchers filed of $1,201.42, which left a balance due from the trustee of $389.88. The clerk had failed to index this settlement. It appears that one of the attorneys who is representing appellant was the county judge before whom T. C. Wells made the settlement, but it is evident that appellant and all those who once knew about the settlement had forgotten it. It is peculiar, however, that appellant failed to remember having received from his trustee after the settlement of 1888, the many items composing the $1,201.42, and the few items presented by the executors that he has received since that date. Another strange thing is that he suffered his trustee, C. T. Wells, to hold this fund from 1888 to his death in 1907, when he was in distressed circumstances, without ever calling upon him, as he claims, for any money or other assistance. Further, appellant did not bring his action in 1901 or 1902 when his trustee refused him any aid, nor did he bring it during the lifetime of C. T. Wells. Why did he delay bringing the suit for two years after the death of his trustee? These facts and circumstances induce us to believe that the lower court did not err in finding that the trustee had accounted to appellant for all that was due him. The lower court perhaps knew the parties and witnesses and was more able to give them the credit to which they were entitled as witnesses. This is evident in this case, for during the trial, the judge, not being satisfied with the record as it appeared, went to the clerk's office and made a search for and found an additional settlement; and his finding in this case is entitled to more weight than is usually ascribed to a judgment of a lower court.

For these reasons the judgment is affirmed.